# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARK THOMAS HILLMAN, ET AL. | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-150 |
| | § | Judge Mazzant |
| CITY OF MCKINNEY, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants'[1] Motion for Summary Judgment (Dkt. #143). Having considered the motion, the responses thereto, and the relevant pleadings, the Court finds that Defendants' motion is granted in part and denied in part.

## BACKGROUND[2][3]

On March 22, 2011, Plaintiffs Mark and Gail Hillman ("Plaintiffs") filed this suit, and later amended their complaint to assert claims against Defendants for violations of constitutionally protected liberty and property interests arising under 42 U.S.C. § 1983, trespass, conversion, unjust enrichment, unlawful lockout, negligence, and tortious interference with a contract.

In 2009, Plaintiffs owned The Zone Entertainment Group, Inc., and operated a family entertainment business known as The Zone McKinney ("The Zone"). The Zone was located at 448 N. Custer Road in McKinney, Texas. McKinney Zone, L.P. owned the land and

---

[1] This motion is brought by Defendants McCrorey Development Corporation, 448 N. Custer Holdings, LLC, Virginia Custer Holding, LLC, McCrorey Family Partnership, LP, William A. McCrorey, Eva A. McCrorey, William M. McCrorey, Alexandra McCrorey, Michael A. Thibodeaux, Richard Massey, Demand Concepts, INc., Run Amuck Entertainment, LLC, and Custer Entertainment Group, LLC. Not all Defendants in the litigation filed this motion for summary judgment; however, for the purposes of this motion, the Court will collectively refer to this group of Defendants as "Defendants" or name the individual defendant at issue.

[2] The Court has considered Plaintiffs' objections to the summary judgment evidence, specifically Plaintiffs' objection to the Defendants' statement of facts set forth in their motion for summary judgment. To the extent that Plaintiffs' objections are proper, they are overruled. In reviewing Defendants' motion for summary judgment, the Court only considered proper summary judgment evidence as provided by the parties.

[3] The Court has also considered Defendants' objection to the statements made by Plaintiffs regarding reputation damages. To the extent that Defendants' objections are proper, they are overruled.

1

improvements at 448 N. Custer Road subject to security interest in favor of First International Bank ("FIB"). In February 2009, FIB foreclosed on the real property and building at 448 N. Custer Road, and FIB informed Plaintiffs that it would begin the process of selling the building. Plaintiffs and FIB entered into a month-to-month rental agreement. While the exact end date of Plaintiffs' lease is in dispute, both parties agree that Plaintiffs planned to operate The Zone through March 29, 2009, and the lease would terminate at the end of March 2009. There is a fact dispute regarding whether the personal property inside the building located at 448 N. Custer Road was also sold or otherwise foreclosed upon.

During the lease, FIB displayed a sign on the building stating, "Commercial Building For Sale." Plaintiffs assert that due to the sign's presence, they lost business. As a result, Plaintiffs notified FIB that they would not be renewing the lease for the month of April 2009, and that their last day of occupation would be March 31, 2009.

FIB located would-be purchasers of the building, including Defendants Michael Ray Costa ("Costa") and William A. McCrorey ("McCrorey"), who were at the time also in negotiations with Michael Thibodeaux ("Thibodeaux"). Plaintiffs were in communication with Costa and McCrorey, who visited The Zone at least once before the night in question. Plaintiffs contend that on or about March 22, 2009, Plaintiff Gail Hillman observed McCrorey looking behind the counters of the business. At this time, Plaintiff Gail Hillman told McCrorey that he was not allowed behind the counters, but that if he wanted a tour she would show him around the property. On March 23, 2009, McCrorey, Costa, and Thibodeaux met with Plaintiffs to discuss purchasing the property, and indicated that they planned to purchase the premises on March 24, 2009. Plaintiffs assert that Defendants threatened them with eviction, and asked to meet with the managers of The Zone McKinney. Plaintiffs refused to arrange that meeting until after the

purchase was completed, and set up an additional meeting for March 24, 2009, at 6:00 p.m. Plaintiffs contend that Defendants did not appear for the scheduled meeting, and Plaintiffs left the premises. Plaintiffs, as well as several employees at The Zone, knew who Costa and McCrorey were and that they were interested in purchasing the property. The parties dispute whether Costa and McCrorey, among others, entered into a lease agreement with FIB for the property at 448 N. Custer Road. It is also disputed that Plaintiffs were never notified that they were being evicted, or otherwise removed, from the building at 448 N. Custer Road before the termination of their lease.

Both parties agree that after 8:00 p.m. on March 24, 2009, Costa contacted the McKinney Police Department and requested an officer meet him at a Home Depot located next door to The Zone. McKinney Police Officer Brent W. Shropshire ("Shropshire") responded to the call, and Costa told him that he was the new owner of a local business/building and that he was trying to take possession, but the original owners were not being cooperative. Costa told Shropshire that he had legal documentation from FIB demonstrating his right to access the building. Plaintiffs argue that Shropshire did not verify or investigate what the documentation was, or whether Costa actually had a legal right to enter the premises, but rather took Costa at his word. Shropshire stated that while he had no way to verify whether Costa was telling the truth, he informed Costa that it was a civil matter, and Shropshire was not permitted to get involved. Costa asked Shropshire to accompany him to The Zone in order to ensure that no breach of the peace occurred during the takeover. Shropshire agreed to do so.

Costa claimed he informed Lisa Egnew ("Egnew"), the on-duty manager, that he was the new owner of the building, that he had paperwork to prove it, and that he and his associates wanted to enter the building. Shropshire stated that he spoke with Egnew and asked her

3

permission to allow the men to enter the building. Egnew stated she was not certain she had a direct conversation with Shropshire, but that she may have let the men into the building because Shropshire was a police officer. After Costa, McCrorey, and their associates entered the building, they began informing the employees they were the new owners.

Sometime after the men entered the building, Plaintiffs received a phone call from Sean Ambrose ("Ambrose"), who stated that Costa and McCrorey were in the building, and they were going to take it over. Plaintiffs immediately went to The Zone and found Costa and McCrorey inside the building and changes being made to the locks. When the Plaintiffs arrived they were physically prevented from removing some of their belongings from the building. Plaintiffs and Costa both, separately, called the McKinney Police Department to ask that the others be removed. A few minutes after 11:00 p.m., Shropshire and another officer arrived at the building. Upon arriving, Shropshire noticed a group of people, including Costa, outside of the building. Shropshire then spoke with Costa or McCrorey and Plaintiffs. Costa or McCrorey told Shropshire that they were now the new owners of the building and that they had documentation to prove it. Shropshire also spoke to Plaintiffs, who told him they had a lease on the premises, and if they could enter the building they would get the documentation to prove it to him. Shropshire told both parties that the issue of who had the right to be on the premises was a civil matter, and he could not get involved. Despite this, Shropshire told Plaintiffs to leave the property because Costa and McCrorey appeared to be in control. Plaintiffs bring this suit under 42 U.S.C. § 1983 alleging violations of their Fourth, Fifth, and Fourteenth Amendment rights. In addition, Plaintiffs allege trespass, conversion, unjust enrichment, unlawful lockout, negligence, tortious interference with an existing contract, and seek damages from loss of reputation and loss of goodwill.

On April 1, 2014, Defendants filed their Motion for Summary Judgment (Dkt. #143). Plaintiffs filed their response on May 2, 2014 (Dkt. #148). Defendants filed their reply on May 12, 2014 (Dkt. #151). Plaintiffs filed their sur-reply to on May 22, 2014 (Dkt. #152)

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary

judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants McCrorey, Thibodeaux, McCrorey Development Corporation, 448 N. Custer Holdings, LLC, Virginia Custer Holdings, LLC, McCrorey Family Partnership, LP, Alexandra McCrorey, William M. McCrorey, Eva A. McCrorey, Richard Massey, Demand Concepts, Inc., Run Amuck Entertainment, LLC, and Custer Entertainment Group, LLC move for summary judgment on all claims except for Plaintiffs' claim of violation of constitutionally protected liberty interests. As a preliminary matter, in their response, Plaintiffs agree that they did not suffer a loss of goodwill to the business enterprise, and they are not seeking damages for loss of goodwill. Defendants are entitled to summary judgment on this claim.

Defendants first assert that Plaintiffs are barred from asserting their claims of conversion and unjust enrichment under the doctrines of res judicata, collateral estoppel, and judicial estoppel. Defendants claim that Plaintiffs previously brought claims for conversion and unjust enrichment against FIB in a lawsuit filed in a state court in Collin County.

The doctrine of res judicata, read in the broadest sense of the term, embraces two distinct preclusion concepts: claim preclusion, often termed "res judicata," and issue preclusion, often referred to as "collateral estoppel." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). Claim preclusion, or "pure" res judicata, is the "venerable legal canon" that ensures the finality

of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits. *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th Cir. 1993).

"Under Texas law, three elements must be satisfied in order for res judicata to be appropriate: '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Carrasco v. City of Bryan, Tex.*, No. H-11-662, 2012 WL 950079, at *3 (S.D. Tex. March 19, 2012) (quoting *Berkman v. City of Keene*, No. 3:10-cv-2378-B, 2011 WL 3268214 (N.D. Tex. July 29, 2011)); *see also Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252-54 (5th Cir. 1991). If these three conditions are satisfied, res judicata prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action. *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).

Issue preclusion, or collateral estoppel, in contrast, promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. Issue preclusion is appropriate only if the following four conditions are met: (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-32 (1979)).

Judicial estoppel further promotes the Court's integrity, as it is intended as protection of the judicial process by reducing the possibility of inconsistent court determinations. *Hopkins v.*

*Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008). Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Id.* There are two requirements necessary to invoke judicial estoppel: (1) the position of the party to be estopped is clearly inconsistent with their prior position; and (2) the prior position must have been accepted by the courts. *Id.* In order for the second requirement to be found, the prior court must have actually accepted the position set forth by the party to be estopped. *In re Coastal Plains, Inc.*, 179 F.3d 197, 206-07 (5th Cir. 1999). This acceptance only means that the position urged by the party to be estopped was adopted, in some form, by the prior court. *Id.*

In Plaintiffs' prior lawsuit against FIB, Plaintiffs did assert claims of conversion and unjust enrichment against FIB. Further, Plaintiffs' claims related to the same facts and arguments regarding the same real and personal property, and the same events occurring the evening of March 24, 2009, that Plaintiffs now assert as the basis for their claims against these defendants in the present litigation. However, in the prior litigation, the parties filed an agreed dismissal order, and the state court dismissed all prior claims by both parties with prejudice.

It is clear that the doctrine of judicial estoppel does not apply, since the position taken by Plaintiffs was never accepted by the court in the prior litigation, and was never adopted in any form by the prior court. Similarly, collateral estoppel will not apply here, since the issue was not fully and vigorously litigated in the prior action and was not necessary to support the judgment in the prior case.

Thus, the Court will turn to the issue of whether Plaintiffs' claims for conversion and unjust enrichment are barred by res judicata. Plaintiffs argue that their claims are not barred because there was no final judgment, the parties were not identical, and the claims were not the

same. However, "[a] dismissal with prejudice is a final judgment on the merits." *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360 (5th Cir. 2003). In the prior state court litigation, Plaintiffs' claims for conversion and unjust enrichment were dismissed with prejudice following a motion by the parties; thus, this element is satisfied. It is true that the parties to the litigation are not identical, since in the state court litigation the party sued was FIB, and here all Defendants are accused of conversion and unjust enrichment. However, if the parties are in privity, this element may still be satisfied. "People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interest can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992)). "Privity exists if the parties share an identity of interest in the basic legal right that is the subject of litigation." *Id.* (citation omitted). FIB was the initial owner of the property at issue here, and it appears that Defendant McCrorey Family Partnership, LP, purchased the property from FIB (Dkt. #152, Ex. 6). The Court can conclude from the evidence presented that Defendant McCrorey Family Partnership, LP, was in privity with FIB; however, the Court has no information or evidence regarding the nature of this entity or the remaining defendants in this litigation and cannot determine whether the remaining defendants were also in privity with FIB or McCrorey Family Partnership, LP. Finally, it is clear that a second action based on the same claims could have been raised in the first action as to McCrorey Family Partnership, LP.

Based on the foregoing, the Court finds that Defendants' motion for summary judgment on Plaintiffs' claims for conversion and unjust enrichment is granted as to McCrorey Family Partnership, LP. Defendants' motion as to all other defendants is denied.

Defendants next move for summary judgment on Plaintiffs' claims arising under 42 U.S.C. § 1983, asserting that McCrorey and Thibodeaux violated their constitutionally protected property rights under the Fourth, Fifth, and Fourteenth Amendments when they barred Plaintiffs from entering the property in which they had a possessory interest.

To state a claim under section 1983, Plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dallas Indep. School Dist.*, 28 F.3d 521, 525 (5th Cir. 1994); *James v. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). An individual defendant is liable under section 1983 only for his own violation of a plaintiff's constitutional rights, or where he showed deliberate indifference to the violation of plaintiff's constitutional rights by his subordinates. *James*, 535 F.3d at 373.

It is obvious that McCrorey and Thibodeaux are not state actors as required by Section 1983. There are two avenues that exist by which a state action may be found from the acts of a private person. *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). The first is when the private actor performs a function that is traditionally a function of the state, and the second is when there is a nexus between the state and the private person's action such that the action may be attributable to the state. *Id.* A finding of state action may only be satisfied under these avenues if the state is responsible for that conduct, or has provided significant encouragement for the decisions of the private party. *Id.*

Furthermore, if the private parties are involved in a conspiracy with a state official they may also be found liable. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an

officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id*. (citing *United States* v. *Price*, 383 U.S. 787, 794 (1966)). In order to prevail on a claim for conspiracy, Plaintiffs must be able to prove five elements: (1) combination of two or more people; (2) an object to be accomplished that is either an unlawful purpose, or a lawful purpose by unlawful means; (3) a meeting of the minds on the course of action or the object to be accomplished; (4) one or more unlawful acts; and (5) damages as the result of the acts. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). To be found liable for conspiracy, it must be shown not only that there was such a conspiracy, but also that the defendant agreed with at least one of the other conspirators on the illegal object or act and intended it to happen. *Ward v. Sinclair*, 804 S.W.2d 929, 931 (Tex. App.—Dallas 1990, writ denied).

In their motion for summary judgment, McCrorey and Thibodeaux state that there is no evidence that there is a nexus between the actions of Shropshire and their actions or that they conspired with Shropshire. Thus, McCrorey and Thibodeaux assert that they cannot be liable under 42 U.S.C. § 1983. Defendants also contend that Thibodeaux cannot be liable as he was not at the building on the night of the lockout, and there is no evidence that he was involved further than planning to purchase a building and set up a business.

With regards to McCrorey, who was at the building on the night of the events in question, there is evidence offered by Plaintiffs sufficient to demonstrate a genuine issue as to material fact that McCrorey's actions may have had a nexus to those of the state actor, Shropshire. There is evidence that Shropshire was at the scene at the time of the original entrance, that he allowed McCrorey to enter the building as if he were the owner, change the locks on the premises, and further allowed McCrorey to remain on the property after Plaintiffs arrived at the building. Evidence is also provided that Shropshire may have actually encouraged Egnew to allow

11

McCrorey to enter the building when he first arrived; therefore, it may be found that there is a nexus between the actions of McCrorey and the state actor, Shropshire. Thus, summary judgment as to McCrorey is denied.

As to Thibodeaux, Plaintiffs' only evidence regarding Thibodeaux's conduct is that he attended a meeting including Plaintiffs, McCrorey, and Costa, to discuss the purchase of Plaintiffs' business. There is no evidence that Thibodeaux conspired to accomplish an unlawful act, or that there was a nexus between the actions of Thibodeaux and Shropshire. Thus, the Court finds that summary judgment is granted as to Plaintiffs' claims against Thibodeaux for a deprivation of constitutional property interests.

Defendants next move for summary judgment on Plaintiffs' claim of trespass. This claim is asserted only against Defendants McCrorey and Thibodeaux. Plaintiffs allege that McCrorey and Thibodeaux trespassed onto their property on the night of March 24, 2009, that Plaintiffs had exclusive right to the property, and that Defendants' entry onto the property was unauthorized.

Trespass is the unauthorized physical entry onto a person's property by someone or something. *Ronald Holland's A-Plus Transmission & Auto. v. E-Z Mart Stores, Inc.*, 184 S.W.3d 749, 758 (Tex. App.—San Antonio 2005, no pet.). However, this entry need not be in person, and may be made if a person caused or permitted another to cross the boundary of the property unauthorized. *Id.* "A person likewise trespasses when he intentionally causes a third person to enter land in the possession of another." *Wilen v. Falkenstein*, 191 S.W.3d 791, 797-98 (Tex. App.—Fort Worth 2006, pet. denied). In order to recover damages for trespass, a plaintiff must be able to prove three elements: (1) plaintiff owns, or had a legal right of possession, on the alleged property; (2) defendant entered the property, and said entry was physical, intentional, and voluntary; and (3) defendants' trespass caused injury to plaintiff. *Wilen*, 191 S.W.3d at 797-98.

Furthermore, although a person initially had a right to entry onto property, the moment this right to entry is exceeded, the person becomes a trespasser retrospectively from the moment of entry. *Humphreys Oil Co. v. Liles*, 262 S.W. 1058, 1064 (Tex. Civ. App.—Waco 1924). Subsequent abuse of the authorization to enter onto property renders the entry trespass ab initio. *Am. Mort. Corp. v.* Wyman, 41 S.W.2d 270, 273 (Tex. Civ. App.—Austin 1931, no writ.). One who remains on property, after demand for their removal by the lawful possessor, becomes a trespasser ab initio. *O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.).

In their motion, Defendants argue that McCrorey cannot be found liable for trespass because McCrorey never physically, intentionally, and voluntarily entered onto the property of Plaintiffs. In the alternative, Defendants contend that even if the elements of trespass are shown, McCrorey cannot be found liable for trespass due to the fact that he was lawfully invited into the building by Egnew.

Viewing the evidence in the light most favorable to Plaintiffs, there is evidence in the record that McCrorey physically, intentionally, and voluntarily entered onto Plaintiffs' property. McCrorey was seen inside the building, to which he went with the intention to voluntarily enter and take it over. There is also evidence that McCrorey's trespass caused Plaintiffs' damages, and a fact question remains as to who had legal right to possess the property at the time of the entry.

McCrorey also contends he is entitled to summary judgment due to the fact that he was lawfully invited into the building by Egnew. Although McCrorey may have had a right to enter into the building at one point in time, that right vanished when Plaintiffs asked him to leave.

*O'Kane*, 2008 WL 2579832, at *5. Therefore, the Court finds that Defendants' motion for summary judgment on Plaintiffs' claim for trespass against McCrorey is denied.

With regard to Defendant Thibodeaux, the evidence demonstrates that Thibodeaux was not at the building on the night of March 24, 2009. While encouragement, planning, or assistance of another who trespasses can be enough to establish liability for trespass, there is simply no evidence that Thibodeaux encouraged, planned, or assisted McCrorey or anyone else in the alleged trespass. The only evidence available suggests that Thibodeaux was merely involved in a business meeting with the other defendants to this litigation. This is not enough to survive summary judgment, and the Court finds that Defendants' motion for summary judgment on Plaintiffs' claims for trespass against Thibodeaux is granted.

Defendants also move for summary judgment on Plaintiffs' claim for unlawful lockout on the basis that judicial estoppel and collateral estoppel bar Plaintiffs' claim. In the alternative, Defendants assert that there is insufficient evidence to support this claim. The Court agrees that collateral estoppel bars this claim for unlawful lockout against Defendant McCrorey Family Partnership, LP. This claim could have been brought in the prior litigation against FIB, with whom Defendant McCrorey Family Partnership, LP is in privity. However, the Court disagrees that Plaintiffs are barred from bringing this claim against the other defendants by the doctrines of collateral estoppel or judicial estoppel. After a review of the underlying litigation against FIB, the issue of unlawful lockout was never even mentioned, or claimed by Plaintiffs. Therefore, collateral and judicial estoppel do not apply here.

> Under Texas law regarding the rights of a commercial tenant:
>
> A landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from: (1) bona fide repairs, construction, or an emergency; (2) removing the contents of

premises abandoned by a tenant; or (3) changing the door locks of a tenant who is delinquent in paying at least part of the rent.

TEX. PROP. CODE § 93.002(c). The statute goes on to state, "If a landlord or landlord's agent violates this section, the tenant may: (2) recover from the landlord…." TEX. PROP. CODE § 93.002(g). The issue of a landlord – tenant relationship is an issue of fact, and as such it should be properly submitted to the jury. *Johnson v. Baty*, NO. 01-86-00848-CV, 1987 WL 20005, at *2 (Tex. App.—Houston [1st Dist,] 1987 Nov. 19, 1987, no writ).

Plaintiffs provide no evidence that any of the Defendants were acting as landlords of the property, with the exception of McCrorey. McCrorey is the only individual who alleged to have the authority to change the locks on the building, and as such, there is a genuine issue of material fact as to whether there was a landlord-tenant relationship. With respect to McCrorey, Defendants' motion for summary judgment on Plaintiffs' claim of unlawful lockout is denied. With respect to all other Defendants against whom this claim is asserted, this claim is dismissed.

Defendants move for summary judgment on Plaintiffs' claim for negligence. This claim is asserted against McCrorey, Thibodeaux, and McCrorey Family Partnership, L.P. Defendants contend that they owed no duty to Plaintiffs, that they breached no duty owed to Plaintiffs, and that there is no evidence that any damages occurred to Plaintiffs.

In order to establish negligence a party must show: (1) a legal duty exists; (2) a breach of that legal duty by the defendants; and (3) damages that were caused by that breach of duty. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). "In a negligence action, '[w]hether a duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question.'" *Taylor Pipeline Const., Inc. v. Directional Rd. Boring., Inc.*, 438 F. Supp. 2d 696, 711 (E.D. Tex. 2006). This duty is the legally enforceable obligation the court imposes on individuals to conform to a particular standard. *Id.* However, though duty is a

question of law to be determined by the court, it is well settled that the issue of the breach of this duty is one of fact. *Heat v. Welch Research Corp.*, 644 F.2d 487, 489 (5th Cir. 1981).

Under the doctrine of respondeat superior, the employer may be liable for the negligent actions of an employee, or of an agent, acting within the scope of their employment. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541-42 (Tex. 2002). To determine if a "master-servant" relationship exists, as to hold the employer liable, the "supreme test" is the right to control. *Golden Spread Council, Inc. #562 of the BSA v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996). Although there is generally no duty to control the conduct of another, this rule does not apply when a special relationship exists between the negligent actor and a third party that imposes upon the actor a duty to control the other's conduct. *Tex. Home Mgmt. v. Peavey*, 89 S.W.3d 30, 34 (Tex. 2002). A special relationship between parties can come about through a joint enterprise which is formed when: (1) there is an agreement between the members; (2) this agreement is to reach a common purpose; (3) there is a community of pecuniary interest; and (4) the parties have an equal right to control the enterprise. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995). Circumstantial evidence may be used to satisfy an element when reasonably inferred from other facts in the case, however this circumstantial evidence must be more than a scintilla to withstand a no-evidence challenge. *Id.*

Defendants contend that they owed no duty to Plaintiffs, and therefore cannot be found negligent. Plaintiffs, however, contend that Defendants owed a duty not to damage their business or their property during the takeover. An ordinary duty of care arises in a bailment situation, and a bailee's standard of care is the care a reasonable and prudent person would use in protecting bailor's property. *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 211 (Tex. App. – Corpus Christi 2002, no pet.). There is no evidence that Thibodeaux owed a duty to Plaintiffs, as

he did not enter the property. Further, there is no evidence that he took over or intended to take over the property, or that he became a bailee of Plaintiffs' property. Thus, as to Thibodeaux, Defendants' motion for summary judgment is granted, and Plaintiffs' claim for negligence against Thibodeaux is dismissed.

There is sufficient evidence to suggest that McCrorey entered the property of Plaintiffs, attempted to take over the property, and allegedly became a bailee of Plaintiffs' personal property. There is also some evidence to suggest that McCrorey was working for or on behalf of the McCrorey Family Partnership, L.P. Thus, the Court finds that Defendants' motion for summary judgment is denied on Plaintiffs' claim for negligence against McCrorey and the McCrorey Family Partnership, L.P.

Plaintiffs allege that Defendants tortiously interfered with their existing lease contract that Plaintiffs entered into with FIB for the lease of the property in question. This claim is asserted against McCrorey and Thibodeaux.

"To recover for tortious interference with contract, a plaintiff must prove: '(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred.'" *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). The intent to interfere does not need to be intent to cause damage. *SW Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

Defendants argue that Plaintiffs' claim fails because they did not interfere with the contract of Plaintiffs' lease agreement with FIB, they did not disrupt any future revenues that

Plaintiffs would have received, and that Thibodeaux could not have tortuously interfered with the contract as he was not there on the night of March 24, 2009.

Plaintiffs provide evidence sufficient to raise a fact issue that McCrorey interfered with the lease between Plaintiffs and FIB. Plaintiffs paid rent for a lease agreement with FIB that was not to expire until March 31, 2009. Defendants allegedly then signed a subsequent lease with FIB that was to begin prior to the expiration of Plaintiffs' lease. Plaintiffs also provide evidence that Defendants knew of Plaintiffs' occupancy, as Defendants met with them prior to the night of March 24, 2009. The evidence also suggests that Defendants knew of Plaintiffs' plan regarding leaving the building and closing the business, that Defendants went to FIB, with whom Plaintiffs had their contract, and Defendants told Plaintiffs and FIB that Defendants wanted to "hurry up" and take over the business prior to the end of the month.

In the opinion of this Court, Plaintiffs have provided sufficient evidence to create a fact question regarding whether McCrorey tortiously interfered with Plaintiffs' contract with FIB. Thus, Defendants' motion for summary judgment on this claim against McCrorey is denied.

As for Thibodeaux, there is absolutely no evidence that he was involved in a takeover, conspired with any other defendant to interfere with the contract, or was otherwise involved. Thus, Defendants' motion for summary judgment on this claim against Thibodeaux is granted.

Plaintiffs allege Defendants' acts on the night of March 24, 2009, damaged their reputations in the community and caused them significant embarrassment. Defendants contend that there is insufficient evidence to support Plaintiffs' damages allegations.

Plaintiffs assert that their children were picked on in school due to Plaintiffs' inability to pay the employees that staffed Plaintiffs' business, and that their inability to pay what was owed caused Plaintiffs' embarrassment. This statement alone is insufficient to show any sort of

pecuniary loss suffered by Plaintiffs. There is no evidence in any of the affidavits or other evidence submitted in the summary judgment response to indicate a loss of reputation in the community. Thus, the Court finds that summary judgment should be granted in favor of Defendants' on Plaintiffs' claims for loss-of-reputation damages. Plaintiffs concede that they are not seeking loss of goodwill damages.

## **CONCLUSION**

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment (Dkt. #143) is granted in part and denied in part.

The Court finds that Plaintiffs' claims for loss-of-goodwill and loss-of-reputation damages are dismissed against all Defendants.

The Court finds that Plaintiffs' claims for conversion, unjust enrichment, and unlawful lockout against Defendant McCrorey Family Partnership, LP are dismissed, and the only remaining claim against this defendant is for negligence.

The Court finds that Plaintiffs' claims against Defendant Thibodeaux for a deprivation of a constitutionally protected property interest arising under 42 U.S.C. § 1983, trespass, unlawful lockout, negligence, and tortious interference with a contract are dismissed. The only claims remaining against this Defendant are for conversion, unjust enrichment, and a constitutional deprivation of liberty interests.[4]

The Court finds that Plaintiffs' claims against Defendant William A. McCrorey remain in their entirety, including those claims for conversion, unjust enrichment, a constitutional deprivation of liberty and property interests, trespass, unlawful lockout, negligence, and tortious interference with a contract.

---

[4] The Court notes that Defendants did not move for summary judgment on Plaintiffs' claim for violation of a constitutionally protected liberty interest, and this claim remains as to Defendants McCrorey and Thibodeaux.

The Court finds that Plaintiffs' claim against Defendants McCrorey Development Corporation, Virginia Custer Holdings, LLC, 448 N. Custer Holdings, LLC, Alexandra McCrorey, William M. McCrorey, Eva A. McCrorey, Richard Massey, Demand Concepts, Inc., Run Amuck Entertainment, LLC, and Custer Entertainment Group, LLC for unlawful lockout are dismissed. All other claims against these Defendants remain, including Plaintiffs' claims for conversion and unjust enrichment.

**IT IS SO ORDERED.**

**SIGNED this 2nd day of October, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE